UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

August 30, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:  *Ian B. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 22-2486-BAH

Dear Counsel:

On September 29, 2022, Plaintiff Ian B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8), the parties' dispositive briefs (ECFs 13 and 18), and Plaintiff's reply (ECF 19). I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on April 13, 2020, and a Title XVI application for Supplemental Security Income ("SSI") benefits on June 8, 2020, alleging a disability onset of January 1, 2018. Tr. 297–305. Plaintiff later amended the alleged onset date to December 10, 2018. Tr. 314. Plaintiff's claims were denied initially and on reconsideration. Tr. 177–80, 181–84, 245–49. On November 2, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 42–82. Following the hearing, on November 10, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 7–26. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this

---

[1] 42 U.S.C. §§ 301 et seq.

process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since" the onset date of his alleged disability. Tr. 12. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "bipolar disorder, recurrent episode depressed, severe without psychotic features and anxiety." Tr. 13. The ALJ also determined that Plaintiff suffered from the non-severe impairment of "degenerative disc disease." *Id*. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. Despite these impairments, and after determining that Plaintiff "has a moderate limitation" in concentrating, persisting, and maintaining pace ("CPP"), Tr. 14, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and maintain concentration, persistence, and pace to perform simple, routine tasks of unskilled work for periods of at least two hours at a time to complete a normal workday/work week. After two hours, he may become distracted and be off task; however, time off task can be accommodated by normal breaks. He is unable to perform high quota production pace work, such as assembly line work where the coworkers work side by side and the work of one affects the work of the others. He is able to frequently interact with supervisors and coworkers, and occasionally interact with the public.

Tr. 15. The ALJ determined that Plaintiff had no past relevant work but could perform other jobs that existed in significant numbers in the national economy, including the job of Photocopy Machine Operator (DOT[2] #207.685-014), Racker (DOT #524.687-018), and Cleaner II (DOT #919.687-014). Tr. 20. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 21.

### III. LEGAL STANDARD

A disability determination must be affirmed so long as the agency applied correct legal

---

[2] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Ian B. v. Kijakazi*
Civil No. 22-2486-BAH
August 30, 2023
Page 3

standards and the factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Craig*, 76 F.3d at 589).

## IV.  ANALYSIS

On appeal, Plaintiff argues that the ALJ's RFC is unsupported by substantial evidence. ECF 13, at 9. More specifically, Plaintiff avers that the ALJ erred by failing to "explain how he decided that a prohibition against 'production pace'" in the RFC "accommodates Plaintiff's difficulties maintaining concentration, persistence, or pace throughout the course of an eight-hour workday." *Id.* at 11. Plaintiff contends that the ALJ similarly failed to support his conclusions that: (1) Plaintiff could only pay attention "for two hours at a time" and (2) Plaintiff's off-task behavior could be accommodated by "normal breaks." *Id.* at 14. Defendant counters that substantial evidence supported each of the ALJ's mental RFC limitations. ECF 18, at 6–17.

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Moreover, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (citation omitted). Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Relevant to this case, and pursuant to *Mascio*, "once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in [CPP,] the ALJ must either include a corresponding limitation in [their] RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted*, (D. Md. June 5, 2015). However, *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC" as long as the "'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (alteration in original) (quoting *Mascio*, 952 F.3d at 638).

Here, the ALJ limited Plaintiff to "simple, routine tasks of unskilled work," working in two-hour increments with "normal breaks," and no "high quota production pace work, such as assembly line work where the coworkers work side by side and the work of one affects the work of the others." Tr. 15. As an initial matter, the first two limitations are inadequate on their own to account for moderate CPP difficulties without an explanation as to why no further limitations are warranted. First, the ALJ's restriction to "simple, routine tasks" was flatly rejected by the Fourth

*Ian B. v. Kijakazi*
Civil No. 22-2486-BAH
August 30, 2023
Page 4

Circuit in *Mascio*, which unambiguously held that "an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work." *Mascio*, 780 F.3d at 638. Second, with respect to the RFC's restriction to working in two-hour increments with normal breaks, this Court has recognized that such a limitation is insufficient to account for moderate CPP limitations because breaks at two-hour intervals are customary even for workers *without* CPP limitations. *See Richardson v. Berryhill*, No. TJS-17-1523, 2018 WL 11474067, at *3 (D. Md. June 25, 2018) ("The ALJ's finding that [claimant] can perform work in two-hour increments with normal breaks does not adequately account for her ability to concentrate and stay on task."); *Ludlow v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-3044, 2016 WL 4466790, at *2 (D. Md. Aug. 23, 2016) (noting that an ALJ's "restriction to working in 2-hour intervals does not adequately account for a moderate limitation in the ability to stay on task, absent further explanation"); *see id.* (citing Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (July 2, 1996) for the proposition that "a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals, and that the occupational base is not eroded where limitations may be accommodated by these regularly scheduled breaks").

Had these two provisions been the only RFC restrictions accounting for Plaintiff's moderate CPP limitations, without more, the Court may have agreed with Plaintiff that the RFC determination was unsupported by substantial evidence. But such is not the case here. First, the RFC also prevented Plaintiff from performing "high quota production pace work, such as assembly line work where the coworkers work side by side and the work of one affects the work of the others." Tr. 15. Plaintiff argues that this RFC limitation, like the others, was unsupported by substantial evidence because the ALJ failed to explain how they "decided that a prohibition against 'production pace' accommodates Plaintiff's difficulties maintaining concentration, persistence, or pace throughout the course of an eight-hour workday." ECF 13, at 11. Plaintiff cites to *Jennifer Anne S. v. Saul*, No. TMD-20-519, 2021 WL 2139432, at *5 (D. Md. May 26, 2021), to support the proposition that because the RFC includes a provision "eliminating jobs with strict production quotas or a fast pace," the ALJ was required to include a narrative explanation of how this limitation accommodates Plaintiff's CPP limitations. ECF 13, at 13.

Plaintiff's argument is unavailing. This Court has previously recognized that similar production-rate RFC restrictions are sufficient to account for a claimant's moderate CPP limitations. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address moderate CPP limitations); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations). Our sister court has similarly held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 1:15CV515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016). *Jennifer*

*Ian B. v. Kijakazi*
Civil No. 22-2486-BAH
August 30, 2023
Page 5

*Anne S.* does not compel remand on this point. In *Jennifer Anne S.*, the Court's concern over the production-rate RFC limitation was based, at least in part, on an insufficient definition of the production-rate restriction. *See* 2021 WL 2139432, at *5 (quoting *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019), among other cases, for the proposition that a lack of sufficient definition for "production pace or strict production quotas" precluded judicial review). Plaintiff here does not challenge the production-pace limitation as being insufficiently defined. In any case, the ALJ here also included more explanation of what constituted "high quota production pace work" than did the ALJ *in Jennifer Anne S. Compare* Tr. 15 (including RFC limitation to no "high quota production pace work, such as assembly line work where the coworkers work side by side and the work of one affects the work of the others"), *with Jennifer Anne S.*, 2021 WL 2139432, at *1 (noting that the RFC limited the claimant to jobs "which would not require a fast pace or production quotas such as would customarily be found working on an assembly line").

Moreover, the ALJ sufficiently explained why Plaintiff's RFC did not warrant additional limitations despite his CPP difficulties. Plaintiff's argument that the ALJ failed to explain this production-pace RFC limitation is belied by a careful review of the ALJ's decision. The ALJ here determined that that "[w]ith regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation." Tr. 14. The ALJ noted that, after a mental status examination during which Plaintiff appeared "inattentive" and "distracted," Plaintiff "was scheduled for a stimulant trial to help his focus and attention." Tr. 17. Additionally—and even more germane to the RFC's provision that Plaintiff cannot perform jobs in which "the work of one affects the work of the others"—the ALJ noted that Plaintiff "does not like listening any time he is told to do something" and that he "likes to do things on his own time and in his own way." Tr. 16. These observations, based upon testimony and objective evidence, provide the Court with the requisite "logical bridge" from the evidence to the ALJ's conclusion that Plaintiff cannot perform at a production-rate pace.[3] *Woods*, 888 F.3d at 694; *see also Gair v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3652, 2015 WL 5774982, at *2 (D. Md. Sept. 28, 2015) (concluding that an RFC restriction to "no strict production quotas" adequately accounted for moderate CPP limitations because the restriction accounted for "any time that [the claimant] would be off-task due to his limited ability to stay focused").

Similarly, the ALJ provided adequate explanation for why Plaintiff could maintain attention for a sustained period of time with only regular breaks. While *in Jennifer Anne S.*, upon which Plaintiff relies, the Court remanded the case for the ALJ to "establish for how long, and under what conditions, [Plaintiff] is able to focus [his] attention on work activities and stay on task

---

[3] To the extent that Plaintiff also argues that the ALJ failed to explain how a production-pace limitation accommodates CPP difficulties "throughout the course of an eight-hour workday," ECF 13, at 11, such an oversight does not constitute error. This Court has recognized that because "an RFC determination implicitly contains a finding that [a] plaintiff is able to work an eight-hour work day, the ALJ's failure to explicitly state that as part of the RFC is immaterial." *Adrienne P. v. Kijakazi*, No. BPG-22-358, 2023 WL 2407394, at *3 (D. Md. Jan. 6, 2023) (finding that an ALJ's failure to address a plaintiff's "ability to perform work-related activities eight hours per day, five days per week" did not warrant remand).

at a sustained rate," the ALJ here has already provided support for this assessment. 2021 WL 2139432, at *5 (quoting *Thomas*, 916 F.3d at 312 n.5). The ALJ here noted that although Plaintiff's "concentration and focus [are] so bad that he could not watch television," Tr. 17, Plaintiff is able to perform " a variety of daily tasks that require some concentration, persistence, and pace, including cleaning and shopping online." Tr. 14. The ALJ further considered Plaintiff's repeated positive reports to his providers over the past several years, including attestations that he was regularly socializing, attempting to take up a new hobby, and attending weekly game nights. Tr. 16–17. Each of these activities indicate conditions and circumstances under which Plaintiff was able to maintain concentration, persistence, and pace, and these observations from the record explain the ALJ's reasoning and allow for judicial review.

Finally, Plaintiff fails to explain how a more detailed explanation of the RFC would change the outcome in this case. Rather, Plaintiff argues that the lack of explanation precludes judicial review. ECF 13, at 12–13. But here, as noted above, the ALJ adequately discussed Plaintiff's limitations and cited to substantial evidence to support his conclusions. Thus, I am able to meaningfully review the ALJ's decision.

In sum, the ALJ amply supported their RFC limitation regarding Plaintiff's CPP difficulties with sufficient evidence and adequately explained why no further limitations were necessary to accommodate Plaintiff's CPP difficulties. Plaintiff does not argue that he cannot perform "even non-production-type work" because of his CPP difficulties. *See Grant*, 2016 WL 4007606, at *9. Nor does Plaintiff explain how a more detailed explanation of the RFC (or another RFC limitation altogether) would change the outcome in this case. Accordingly, I find that the RFC was supported by substantial evidence and that remand is thus unwarranted.

## V.     **CONCLUSION**

For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge